NEHEMIAH T. ADAMS *vs.* JAMES W. MANNING AND ANOTHER.

The plaintiff and defendants were severally the grantees of parties who, in 1866, were the owners of sundry mills and mill sites upon a stream and had for thirty years owned a dam and the right of flowage by it, constituting a reservoir for their common use. In that year the grantors of the defendants, who were riparian owners next below the dam, built a new dam on their own land a little below the old one, and three feet higher, having obtained the right of flowage by it by proceedings under the flowage act. To these proceedings the other parties interested in the old reservoir were not made parties, but they all acquiesced in the building of the new dam, and the submerging by it of the old dam, believing that it would be a substitute for the old dam and of greater benefit to all parties interested; and the new reservoir was thereafter used by all the mill-owners who had before used the old one. Eight years after the erection of the new dam one of the owners of the old one conveyed all his interest in the old dam and in the right to flow by it, to the plaintiff. Held that the rights of the owners of the old dam and reservoir were not to be regarded as abandoned by their acquiescence in the erection of the new dam, but that they still existed, and that the conveyance to the plaintiff vested in him whatever rights his grantor had in the old dam and reservoir, and that these carried with them an interest in the new reservoir so long as the new dam was used to create such a reservoir.

And held that the interest thus acquired in the new reservoir was one which a court of equity would protect against a wilful destruction of the new dam by the defendants. If the defendants did not wish to detain the water they were bound to allow other parties interested to do so. At the same time they were not bound to maintain it at their own expense for the benefit of the plaintiff. It was a matter for equitable regulation.

The parties who constructed the new dam and reservoir made a mortgage of "all their right, title and interest" in it, the deed containing covenants of seisin and warranty, but not otherwise describing the property conveyed or defining the right. The mortgagors subsequently acquired the right to flow certain lands which were in fact flowed at the time but without the right of flowage perfected. Held that this right did not when acquired enure to the benefit of the mortgagee.

The rule that a tenant in common can not convey a several interest in the property has no application to rights held in common to the use of water.

[Argued May 1st—decided May 18th, 1883.]

SUIT for an injunction against the removal of a dam; brought to the Superior Court in Windham County, and

tried before *Hovey, J.* Facts found and decree passed for the plaintiff; appeal by the defendants. The case is sufficiently stated in the opinion, but a full statement of the facts will be found in the report of a case between the same parties, 48 Conn. R., 477.

*J. J. Penrose* and *G. W. Phillips*, for the appellants.

*T. E. Graves* and *J. Halsey*, for the appellees.

CARPENTER, J. In a suit between these same parties and relating to the same subject-matter it was determined by this court that the plaintiff had a right to the use of the water stored and ponded by means of the dam in question, and that those owning or having charge of the dam could not lawfully deprive him of that use by withholding it when needed to operate the plaintiff's mill or letting it run to waste when not so needed. *Adams* v. *Manning*, 48 Conn., 477. The defendants thereupon, claiming to be the sole owners of the dam, threatened to remove it or in some way to render it useless so that the water could not thereby be retained. This suit was brought for an injunction, which the Superior Court granted, and the defendants appealed.

The claim is that the plaintiff has no right to or interest in the reservoir, and that the defendants, being the owners of the dam, and of the land on which it stands, may lawfully remove it.

The plaintiff claims that he has an interest in the reservoir, that he has a right to have the water retained and stored for use in the dry season, as the custom has been for more than forty years past, and that this right gives him such an interest in the maintenance of the dam that it cannot be rightfully removed or destroyed.

The origin of the plaintiff's alleged right is threefold:—

1. The plaintiff is now the owner of twelve of the forty-three shares of the old dam and of the right to flow by it. The old dam was submerged and rendered useless by the new dam. These shares were conveyed to the plaintiff by

Erastus H. Wells in 1875, some eight years after the construction of the new dam. The defendants contend that the plaintiff took nothing by that conveyence, for the reason that Wells at that time had voluntarily abandoned his interest in the old dam. We do not so interpret the finding. The owners of the old dam consented to the construction and operation of the new because they believed that it would be more beneficial to them. They still remained the exclusive owners of the old dam and of the right to flow the land which it would cover with water. That dam and that right the Cockings did not take by their proceedings under the flowage act, and we find nothing in the record to show that the owners ever did in fact or ever intended to part with them. The import of the finding is that they consented to a substitution of the new dam and reservoir for the old, in consideration of which they were to have the same or greater benefits from the new than from the old. But that was not an abandonment of their rights; much less does it show an intention to vest in the defendants' grantors the title to the old reservoir.

The plaintiff therefore took something by his deed from Wells. Precisely the extent and nature of the interest which he took it is not now necessary to determine. We think it was an interest in the new reservoir so long as the new dam was used to create such a reservoir. So much was determined by this court in *Adams* v. *Manning*, supra. Just how the plaintiff is to protect his interest and enforce his right in all circumstances is a matter we need not now discuss. One thing is clear; so long as the present state of things continues, each one is bound to respect the rights of all the others. This duty is reciprocal. The plaintiff cannot on the one hand compel the defendants to maintain the dam at their own risk and expense for his benefit, nor can the defendants on the other hand, of their own will, destroy the dam and thereby deprive the plaintiff of the use of the water. If they do not wish to detain the water they are bound to allow other parties interested to do so. *Miller* v.

*Scolfield*, 12 Conn., 335. It is a matter for equitable regulation.

2. In the proceedings by J. & W. Cocking to obtain the right to flow by means of the then contemplated dam, the dam in question, the committee reported that the petitioners should construct, within a limited time, two causeways, one for Alfred Wetherell and one for Robert Williams, two of the parties whose lands were to be affected and to whom damages were assessed. The time limited expired and the causeways were not built. Some two months afterwards Wetherell and Williams applied for an injunction to restrain the Cockings from flowing their lands, but offered to release them from building the causeways, for the sum of $225. The plaintiff advanced the money which was paid to them for that purpose, and in consideration thereof J. & W. Cocking deeded to him and others "so much water as shall be necessary to run the mills of said Adams and said Warner & Lake in said Woodstock, (always provided there shall be water sufficient in said reservoir for that purpose,) at any and all times when the said J. & W. Cocking are stopping their mill or mills for repairs, and at all other times when the said J. & W. Cocking are not running their said mill or mills." The defendants insist that the plaintiff took nothing by that deed, for the reason that the Cockings had previously mortgaged the premises to William H. Magill, which mortgage was foreclosed and the premises were subsequently conveyed by Magill to the defendants. In that mortgage the property is described as "all their, the said Cockings', right, title, claim and interest in the south meadow reservoir." At that time the right of the Cockings to flow the lands of Wetherell and Williams had not been perfected. As the mortgage in terms conveyed to Magill only such rights as the Cockings then had, whatever rights they subsequently acquired might be conveyed to others notwithstanding the mortgage. But in this connection the defendants insist that whatever rights the Cockings acquired were acquired before the mortgage by the payment of the damages assessed in money, that the committee in the peti-

tion under the flowage act could only assess damages in money, and that they had no power to order the construction of causeways; and that consequently that part of the report was void.

It will be observed that this question was not made by any of the parties to that proceeding. Manifestly damages were assessed with the understanding that the petitioners were to construct causeways. All parties acquiesced in that view of it. Wetherell and Williams accepted the damages awarded and a sum of money as an equivalent for the construction of the causeways; the petitioners paid the damages assessed, the sum agreed on in lieu of the causeways, and constructed their dam and flowed the lands. It is difficult to see how any of the parties to that proceeding can raise the question now if they are disposed to. Much less can it be raised in this collateral manner, in a case where both parties claim under the Cockings. They having submitted to that decree without objection and taken the benefit of it are bound by it, and so are all parties claiming under them. Practically therefore the right to flow was perfected when Wetherell and Williams accepted the money in lieu of the causeways.

It is claimed however that the payment of the money, thus perfecting the right to flow, enured to the benefit of the mortgagees. That doubtless would have been so had the mortgage conveyed the specific property free from incumbrance with the usual covenants; but the principle of estoppel here invoked can have no application to a deed which simply conveys such rights as the grantor then has in the premises, without defining the right.

It is further insisted that the deed is void on its face, because it states that the interest intended thereby to be conveyed was an interest in an undivided half part of the reservoir, the other half being owned by B. W. Wright of New York. Whether any person by the name of Wright was in fact a tenant in common with the grantors does not appear. No such fact appears elsewhere in the case. As the record is otherwise silent on the subject, perhaps it is a

fair presumption that it was so described for the reason that the grantors supposed that Wright would become a part owner by virtue of some arrangement which was never in fact consummated. But if otherwise, we do not think that the deed was void as attempting to create a several interest in common property. The right conveyed was a limited right to use water. The grantors, even if they were tenants in common, clearly had some right to use the water. While they were using it the plaintiff of course would have the benefit of it. A grant of a right to use the water when the grantors were not using it is not void on the ground that it impairs the rights of co-tenants. The principle contended for has no application to the use of water.

On the whole we are satisfied that the plaintiff took some interest in the reservoir by the deed from J. & W. Cocking.

3. The plaintiff also has a deed from Albert Kenyon, the trustee in insolvency of J. & W. Cocking. Various questions arise concerning the validity, effect and operation of this deed. We have no occasion to consider them, because, conceding that the plaintiff took nothing by it, he still had a valuable interest in the reservoir from the sources and in the manner already considered. The decree of the court below protecting that interest is right, and the judgment must be affirmed.

In this opinion the other judges concurred.