WARNER *v.* GRAYSON.

TALBOTT *v.* GRAYSON.

WOOD *v.* GRAYSON.

APPEALS FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 89, 90, 439. Argued December 4, 5, 1905.—Decided January 8, 1906.

An owner of two adjoining parcels obtained on one of them a building loan . and erected an apartment house so near the line of the property mortgaged that ten feet of his adjoining parcel was absolutely necessary for properly conducting the apartment. During the erection of the building, and after it was evident that such ten feet adjoining was essential thereto, he obtained money for its completion on a second mortgage; subsequently he conveyed both parcels subject to the two mortgages on the parcel built on and also to a separate mortgage on the adjoining vacant parcel. The mortgages conveyed the property, together with the improvements, ways, easements, rights, privileges and appurtenances appertaining thereto. On foreclosure of the mortgages *held*, that:

Although an easement for light and air may not have been created by implication, still, under the wording of the conveyances and the circumstances of the case, an easement was created in favor of the mortgagees of the parcel built on against the original owner, and also against his grantee who took with notice, in the ten-foot strip adjoining the parcel on which the building was erected.

It was not necessary that both parcels should be sold as an entirety, but, adequate proportionate protection as to the easement being provided for the mortgagee of the vacant plot, the plot with the building should be sold together with the easement on the ten feet adjoining as one parcel, and the vacant parcel subject to the easement, as another parcel, separately.

THESE are appeals from a decree of the Court of Appeals of the District of Columbia, affirming a decree of the Supreme Court of the District. The bill in the original case was filed by Grayson and others against Wood, Talbott, Duke and others, for the appointment of a receiver for certain property situated in Washington, known as the Victoria Flats; also praying an injunction to restrain the sale of the property by the trustees of the first mortgage; to have an adjudication of the right of an easement alleged to be appurtenant to the property, and for the sale of the Victoria Flats and certain property adjacent thereto, for the marshalling of incumbrances and for general relief. The facts necessary to an adjudication of the case, as we view it, being principally those found in the Court of Appeals, are as follows: Mrs. Alice S. Hill was the owner of lots 1 and 2 in block forty-five of Hill's subdivision, University Park, city of Washington. A diagram of these lots is herewith given.

These lots fronted 150 feet (75 feet each) on Fourteenth street, and 190 feet on Welling Place (now Douglas street). On January 13, 1897, Mrs. Hill conveyed these lots to Nicholas T. Haller. Haller intended to erect an apartment house, which was subsequently placed thereon, and became known as the Victoria Flats. To enable him to build this structure, Haller negotiated a loan of $75,000, and, on January 22, 1897, executed a deed of trust of that date to B. H. Warner and Louis D. Wine, as trustees, hereinafter called the Warner trust, describing in the deed the north 120 feet of the two lots and running westwardly to the depth of 124 feet, as shown on the plat. At the same time Haller executed a deed of trust to McReynolds and Meriweather, as trustees, hereinafter known as the McReynolds trust, upon the remaining portion of said lots 1 and 2, to

secure his notes to the amount of $12,315. There were no improvements on the lots 1 and 2 at the time of making these deeds of trust. Thereafter Haller erected the apartment house on the portions of lots 1 and 2, described in the deed of trust to Warner. In the erection of the building Haller had become indebted to mechanics and materialmen in the sum of $30,087.65 and in the further sum of $10,350 for borrowed money. To avoid mechanics' liens on the property and to secure the borrowed money, a second deed of trust was placed on the property by the same description contained in the Warner deed, Grayson and Heald being the trustees named therein, herein-

after known as the Grayson trust, and bears date December 20, 1897. These deeds of trust were duly recorded. When the Grayson trust was executed and delivered the building had been erected by Haller, the mortgagor. The building contained, upon the south and west sides, in connection with which an easement is said to arise, a large number of doors, windows and porches, the porches encroaching over the line of the property deeded n the McReynolds trust four feet and nine inches, and it is averred in the bill and not denied in the answers that the areaways encroach five feet. There are thirty-six windows in the west wall, nineteen in the south wall, twenty-two doors in the west wall, five doors in the south wall, four cellar windows each in the west and south walls. It was stipulated in the case when it went back for final decree in the Supreme Court as follows:

"The areaways on the west and south sides mentioned by the witness, William J. McClure, consist of excavations from the surface of the ground downward, projecting into the cement walk, and protected by wooden platforms, on grade with and forming part of the said walk, and provided with interstices or openings admitting light to the windows below.

"On the south side of the building there is one doorway or entrance, and, on the west side, four doorways or entrances, opening out on the said cement walk, and not otherwise accessible from the exterior of said building.

"On the said west wall, projecting out on the said cement walk, there are three garbage chutes for collection of garbage from the building, and two openings into the cellar, through which the coal supply of the building is received, the said garbage chutes and coal cellars being accessible from the exterior only by means of the said cement walk."

In both deeds of trust, in addition to the conveyance of the parcels of ground described, there is the following language:

"Together with all and singular the improvements, ways, easements, rights, privileges and appurtenances to the same belonging, or in any wise appertaining, and all the estate,

right, title, interest, and claim, either at law or in equity, or otherwise, however, of the parties of the first part, of, in, to or out of the said land and premises, to have and to hold the said land, premises and appurtenances unto and to the only use of the parties of the second part, the survivors of them, his heirs and assigns."

A default having been made in the payment of interest due upon the notes secured by the deeds of trust, it was arranged that Warner and Wine were to collect the rents from the building, and afterwards Wood collected the rents of the building for a while. There is considerable testimony in the record tending to show an alleged combination on the part of Wood and Talbott, who had acquired the interest of Haller, to scale down the second or Grayson and Heald trust and to prevent the property being sold advantageously, all of which we deem unnecessary to consider in determining the rights of the parties, and shall not undertake to state the details concerning the same. It appears that Haller originally intended to place the building so as to leave ample space on the west and south, between the building and the lines of the lot as covered by the trust deeds, but being notified that a space of forty feet must be left on the east of the property and twenty feet on the north side, because of restrictions in the title of the property, the building was placed practically on the lines of the premises on the west and south, as described in the deeds of trust. The porches and areaways thus necessarily encroached on the adjoining property, as hereinbefore stated. In the view we take of the case it is important to state how Wood and Talbott acquired their interest in the property. In March, 1898, Wood obtained from Haller, in exchange for an equity of Wood's in another property, an undivided one-half interest in the flats property, and Haller conveyed the premises as described in the deed of trust to Warner, together with a ten-foot strip of ground on the south and west sides of the building (see plat), the deed being made for the same by Haller to one Duke, who executed a declaration (dated April 9, 1898), that he held the

property in trust for Haller and Wood, one-half each. About the same time an arrangement was undertaken to be made by Haller, with the knowledge of Wood, by the terms of which, upon the payment of $4,000 upon the McReynolds trust, the ten-foot strip would be released therefrom, and $4,000 was borrowed from the bank upon a security of $4,000 of the McReynolds notes, which loan, not having been paid, the release has not been obtained. On the first of April, 1899, Talbott purchased Haller's remaining one-half interest in the Victoria Flats property, and also one-half interest in that covered by the McReynolds trust, and Wood purchased Haller's remaining one-half interest in the McReynolds equity. The purchase price paid by Talbott was $3,100, and by Wood for the remaining one-half interest in the McReynolds equity, $250. Thus Wood and Talbott became the owners of the equities of redemption in both lots.

The Supreme Court gave the Warner trust a lien upon the ten-foot strip as part of the mortgage premises, a second lien to the Grayson trust, and ordered the property sold as an entirety, at the option of the trustees appointed to sell.

When the case was in the Court of Appeals, upon appeal from the original decree of sale, that court modified the decree below in so far as it gave the Warner trust any lien upon the ten-foot strip on the south and west sides, and ordered a decree in favor of the Grayson trust upon this strip as an easement, and that the property be sold as an entirety or in parts, according to the discretion of the trustees ordered to sell. 22 App. D. C. 432. When the case went back to the Supreme Court the modified decree of sale was entered, from which an appeal was taken to the Court of Appeals, which affirmed the decree of the Supreme Court, 24 App. D. C. 55, and these appeals were sued out to this court.

*Mr. B. W. Parker*, with whom *Mr. R. Golden Donaldson* was on the brief, for appellants Warner and Wine:

The holders of the notes secured by the Warner and Wine

trust are equitably entitled to the benefit of the easement over the ten-foot strip, for the reason that the $75,000 which they advanced was the means of erecting the building, and thereby creating the security.

All improvements and betterments made upon real estate, by the mortgagor, or those claiming under him, after the execution of the mortgage, inure to the benefit of the mortgagee and become a part of the security for the debt. 10 Am. & Eng. Ency. of Law, 1st ed., 260; 16 Am. & Eng. Ency. of Law, 2d ed., 119; *Owen* v. *Fields*, 102 Massachusetts, 102; 1 Jones on Mortgages, § 681; *Scanlon* v. *Geddes*, 112 Massachusetts, 17; *Snow* v. *Orleans*, 126 Massachusetts, 456; *Martin* v. *Beatty*, 54 Illinois, 100; *Rice* v. *Dewey*, 54 Barb. 455; *Water Co.* v. *Fluming Co.*, 22 California, 621; *Booream* v. *Wood*, 27 N. J. Eq. 371; *Childs* v. *Dolan*, 5 Allen (Mass.), 319; *Holmes* v. *Morse*, 50 Maine, 102; *Butler* v. *Page*, 7 Met. (Mass.) 40; *Graeme* v. *Cullen*, 23 Gratt. (Va.) 266; *Wharton* v. *Moore*, 84 N. Car. 479.

No authority need be cited to the effect that the deed of trust in question is in legal effect a mortgage.

Although there was no house upon the land mentioned in the Warner trust when it was executed, there is no doubt but these appellants have a lien upon such house. When erected it became a part of the land, and it follows that the easements did also. The easements are a part of the dominant estate and inhere in it, and cannot exist or be conveyed separate from it. *Moore* v. *Crose*, 43 Indiana, 30. They inure to the benefit of the mortgage security upon it. 10 Am. & Eng. Ency. of Law, 2d ed., 402; *Hankey* v. *Clark*, 110 Massachusetts, 262; *Shepherd* v. *Pepper*, 133 U. S. 622; *James* v. *Jenkins.* 34 Maryland, 1; *Evans* v. *Dana*, 7 R. I. 306; Washburn's Easements, 4th ed., 664; *Powell* v. *Sims*, 5 W. Va. 635; *Turner* v. *Thompson*, 58 Georgia, 268; *Rennyson's Appeal*, 94 Pa. St. 147; *Sutphen* v. *Therkelson*, 38 N. J. Eq. 318; *Whiting* v. *Olney*, 3 Mason, 280.

Under the grant of a thing whatever is parcel of it, or of the

essence of it, or necessary to its' beneficial use and enjoyment, or in common intendment included in it, passes to the grantee.

'This principle is based upon the maxims that no man shall derogate from his own grant, and whoever grants the same shall be understood to grant, also, whatever is indispensable to the full' beneficial enjoyment of it.

The implied grant of an easement will be sustained, in cases of necessity. *Rosewell* v. *Pryor*, 6 Mod. 116; *Palmer* v. *Fletcher* 1 Lev. 122; *Buss* v. *Dyer*, 125 Massachusetts, 287; *Collier* v. *Pierce*, 7 Gray, 18; *Story* v. *Odin*, 12 Massachusetts, 157; *Insurance Co.* v. *Patterson*, 103 Indiana, 582; *Lampman* v. *Milks*, 21 N. Y. 505; *Smyles* v. *Hastings*, 22 N.Y. 217; *Clawson* v. *Primrose*, 4 Del. Ch. 643; *Cave* v. *Crafts*, 53 California, 135; *Ray* v. *Sweeney*, 14 Bush. (Ky.) 1; *Bank of British North America* v. *Miller*, 6 Fed. Rep. 545; *Sheets* v. *Selden*, 2 Wall. 177; *New Ipswich Factory* v. *Batchelder*, 3 N. H. 190; *Rogers* v. *Sinsheimer*, 50 N. Y. 646; *Havens* v. *Klien*, 51 How. (N. Y.) 82; *Siebert* v. *Levan*, 8 Pa. St. 383; *Reiner* v. *Young*, 38 Hun, 335; *Grace Church* v. *Dobbins*, 153 Pa. St. 294; *United States* v. *Appleton*, 1 Sumner, 492.

*Mr. John Ridout*, and *Mr. Charles F. Carusi* for Wood and Talbott.

A written instrument will not be reformed for mistake or fraud unless clear, positive and convincing evidence be produced showing the existence of such mistake or fraud.

No one can have a *de facto* or any other kind of easement in his own land, and there is nothing in the language of the deed of trust of December 20, 1897, or in the attendant circumstances, from which any intention to convey more than the land described by metes and bounds and the improvements thereon can be gathered.

An easement must be in the lands of another. 14 Cyc. 1139.

There is nothing in the record to show that Haller or the appellees, or anybody else, conceived that Haller had a *de facto*

easement in the adjoining ground, which he tried expressly to convey to the appellees under this language in his deed.

In the District of Columbia an easement of light and air cannot be acquired by implication. In the United States the English doctrine of implied easements of light and air has been repudiated. *Leech* v. *Schroeder*, L. R. 9 Ch. App. 463; *Cherry* v. *Stein*, 11 Maryland, 1; but see *Janes* v. *Jenkins*, 34 Maryland, 1. In most of the cases cited by counsel for the Warner trust, the easement was sustained on other grounds, generally that of necessity, and the light and air element was mere *dicta*.

The doctrine of implication from necessity seems, therefore, to have existed in this country as a theory in the minds of some judges rather than as a rule of law, and there is no implied grant of the right to light and air over the grantor's other land adjoining the land conveyed. *Kennedy* v. *Burnap*, 52 Pac. Rep. (Cal.) 843; *Hutchins* v. *Munn*, 22 App. D. C. 88; *Keiper* v. *Klein*, 51 Indiana, 316; *Randall* v. *Sanderson*, 111 Massachusetts, 114; *Keats* v. *Hugo*, 115 Massachusetts, 204; *Palmer* v. *Wetmore*, 2 Sandf. 316; *Meyers* v. *Gemmel*, 10 Barb. 537; *Shipman* v. *Beers*, 2 Abb. (N. Car.) 435; *Mullen* v. *Stricker*, 19 Ohio St. 135; *Haverstick* v. *Sipe*, 33 Pa. St. 378; *Robinson* v. *Clapp*, 65 Connecticut, 365; *Turner* v. *Thompson*, 58 Georgia, 268; *Morrison* v. *Marquardt*, 24 Iowa, 35, 444; *Colier* v. *Pierce*, 7 Gray, (Mass.) 18; *Rennyson's Appeal*, 94 Pa. St. 147; *Powell* v. *Sims*, 5 W. Va. 1.

The case of *Shepherd* v. *Pepper*, 133 U. S. 626, 650, does not justify the decree in this case either as to the easement or as to the sale as an entirety. Wood and Talbott are entitled to have the ground adjoining the apartment sold separately subject to the $12,000 trust.

*Mr. J. J. Darlington*, with whom *Mr. Jesse E. Potbury* was on the brief, for Grayson, trustee.

It is impossible upon this record to contend that Wood and Talbott stand in a better position than Haller would do if he were still the owner of the equities in the two properties.

The ·case ·falls under *Manogue* v. *Bryant*, 15 App. D. C. 245, and see p. 256 as to appellant's contention that the appellees were negligent in not having a survey or measurement made, in order to ascertain whether the building, as erected, was within the lines of the· trust deed. *Frizzell* v. *Murphy*, 19 App. D. C. 440, 446; *Shepherd* v. *Pepper*, 133 U. S. 626, 650, controls this case.

As to the application of .the rule that where a man grants a thing, he grants with it everything necessary to its enjoyment, and a grant by the owner of a tenement will pass to the grantee all those continuous and apparent quasi-easements which are necessary to the reasonable enjoyment of the property granted, ·and which are at the time of the grant used by the owner of the entirety for the benefit of the part granted, these being regarded as easements appurtenant to the land granted. In order that such an easement may pass by implication, it must be annexed to the estate granted, must be reasonably necessary for the beneficial enjoyment of the same, and must be in open, apparent and continuous use at the time of the grant, 14 Cyc. 1166; *Durkee* v. *Railroad Co.*, 24 N. H. 489, all of which conditions concur in the case at bar.

A strict or indispensable necessity is not necessarily the condition of such implication; it is sufficient if the necessity be such as to render the easement necessary for the convenient and comfortable enjoyment of the property, and as it existed before the severance was made. See as to open, visible ditches, 14 Cyc. 1169; *Thayer* v. *Payne*, 2 Cush. 327; *McElroy* v. *McLeary*, 71 Vermont, 396; *Stuyvesant* v. *Early*, 58 N. Y. App. Div. 242; *Sanderlin* v. *Baxter*, 76 Virginia, 299; *Quinlan* v. *Noble*, 75 California, 250; a furnace flue, *Ingalls* v. *Plamondon*, 75 Illinois, 118; an alley way, *Cihak* v. *Klekr*, 117 Illinois, 643; *Burns* v. *Gallagher*, 62 Maryland, 462; a water ditch and water rights, *Cave* v. *Crafts*, 53 California, 135; rights of way, *Ellis* v. *Bassett*, 128 Indiana, 118; *McTavish* v. *Carroll*, 7 Maryland, 352; stairways in a building, *Galloway* v. *Bonesteel*, 65 Wisconsin, 79; *Geible* v. *Smith*, 146 Pa. St. 276; a flow of water

forced from vendor's premises, through pipes, to the premises of the vendee, *Toothe* v. *Bryce*, 50 N. J. Eq. 589; a portion of a building projecting upon the land retained by the vendor, *Railroad Co.* v. *Needham*, 61 N. Y. Supp. 992. See also *Irvine* v. *McCrany*, 108 Kentucky, 495; *Maynard* v. *Esher*, 17 Pa. St. 222; *Dill* v. *Board of Education*, 47 N. J. Eq. 421; *Halloway* v. *Southmayd*, 139 N. Y. 390; *Whiting* v. *Gaylord*, 66 Connecticut, 337, and other cases cited on brief for Warner trust.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

These appeals raise practically three questions:

1st. Was the Warner trust entitled to an easement, and, if so, to what extent, in the lands on the south and west of the flats building?

2d. Was the Grayson trust entitled to a like easement in the same premises? and,

3d. Was the property properly authorized to be sold as an entirety in the discretion of the trustees?

As to the first proposition, the Supreme Court was of opinion that the Warner trust was entitled to ten feet on the south and west sides of the property. The Court of Appeals was of the opinion that as the lots were not built upon at the time when the deed of trust was executed, and it was not then known that an easement would be necessary to the enjoyment of the property as constructed, the Warner trust took only the conveyances of the land by metes and bounds, without an easement, which that court held arose from the manner in which the building and its appurtenances were subsequently constructed and used.

The record discloses that the loan secured by the Warner trust was made for the purpose of erecting a hotel or apartment building. It is established that the first purpose of the proprietor was to construct the building so as to leave an adjacent space and way for its accommodation and use, between

its outer walls and the lot lands adjacent on the west and south. This purpose was changed upon notification that restrictions in the title of the property required the building to be set back from the streets. The building was thereupon constructed by the mortgagor in the manner shown. The deed of trust was a mortgage security and Haller continued to be the owner of the property to the full extent of the lots. The building was constructed in such wise that the use of some of the adjacent property, even independent of an easement for light and air, was absolutely necessary to the use and enjoyment of the building as constructed. It did not need the expert testimony which was introduced in the case to establish the fact that if another structure should be erected, practically even with the wall of the building, it would prevent access to and greatly impair the use of the south and west sides thereof. It would require the closing of the areaways, the shutting of the windows and doors, and must necessarily greatly depreciate the value of the property. The Warner trust contained the language (above quoted), conveying the described premises, with all and singular the improvements, ways, easements, rights, privileges and appurtenances to the same belonging or in anywise appertaining, etc., to have and to hold to the second parties, their heirs and assigns. It is true that there was no building upon the property at the time when this deed of trust was executed, but it is equally true that it was within the knowledge and purpose of the parties that a building should be constructed, which would be the principal security for the money loaned. And no one disputes that when Haller constructed the building upon the property it became immediately subject to the mortgage. He was the owner of the adjacent premises, and when he abandoned the design to leave sufficient space about the building for its proper use and enjoyment, and erected it in such manner and so close to, and overlapping upon, other parts of his own property as to require the use of an easement therein in order to occupy the building and permit the enjoyment and use of it as constructed, we

see no reason why the express language of the conveyance above quoted would not carry with the building thus constructed the improvements, ways, appurtenances, rights and privileges necessary to the enjoyment of the same. The principle upon which subsequent buildings and fixtures annexed to the realty become a part thereof for the benefit of the mortgagee is thus stated in *Butler* v. *Page*, 7 Metcalf (Mass.), 40:

"All buildings erected and fixtures placed on mortgaged premises, by the mortgagor, must be regarded as permanently annexed to the freehold. They go to enhance the value of the estate, and will therefore inure to the benefit of the mortgagee so far as they increase his security for his debt; and to the same extent they enhance the value of the equity of redemption, and thereby inure to the benefit of the mortgagor. *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 306. There is no necessity to adopt any liberal rule in regard to fixtures, to enable the mortgagor to remove what he has erected at his own expense; because he has the full benefit of all such improvements when he regains the estate by redemption, which he may do, simply by payment of his actual debt. The general rule of the common law, therefore, that what is fixed to the freehold becomes part of the realty, and passes with it, has its full effect, in regard to things erected on the land by an owner, who subsequently mortgages the land, and also in regard to things erected by the mortgagor after the mortgage."

To the same effect is *Graeme* v. *Cullen*, 23 Gratt. (Va.) 266. Had Haller not owned the surrounding premises, but acquired the adjacent ten-foot strip with a view of remedying the fault which he had committed in putting the building flush upon the line, and constructed his building so as to make the easement necessary to its use, we think there could be no question that the easement thus acquired would inure to the benefit of the mortgagee. Such is the principle stated in *Hankey* v. *Clark*, 110 Massachusetts, 262. In that case tenants in common owned two adjoining tracts of land on a river, the lower one

subject to a mortgage. They sold the upper tract, reserving to themselves, their heirs and assigns, the right to draw water from a reservoir on the upper for the use of the lower (mortgaged) tract. The equity of redemption of one of them in the lower tract was sold and vested in A, who also acquired title in that tract through mesne conveyances under a foreclosure of the mortgages. The court held that A was vested with the title to draw water from the reservoir under the reservation. The court said: "Incorporeal rights of this description, acquired by the mortgagor subsequent to the date of the mortgage, for the permanent improvement of the estate, and annexed by the terms of the conveyance to the realty, may be considered as passing to the mortgagee by the foreclosure, to be exercised by him at his election. There is no reason why incorporeal rights and annexed to the realty should not inure to the benefit of the mortgage security in the same manner as improvements in the nature of fixtures inure. *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 306, 310. Until foreclosure the mortgage is deemed a lien or charge, subject to which the estate may be conveyed, improved and in other respects dealt with as the estate of the mortgagor.", We cannot see that it makes any difference in principle that the easement in the present case is annexed by the mortgagor by necessity, as the result of the manner in which he has improved the property. It is not contended that, as against the McReynolds trust, created at the same time with the Warner trust, and before the erection of the building, an easement was acquired in this strip, but we are now dealing with rights in the property as between Haller and the mortgagee, and we think the granting clause quoted above included not only the improvements, ways and easements upon the property at the time; but such as became necessarily appurtenant thereto upon the adjacent property of the grantor, because of the structure which he has placed upon the premises, to the enjoyment of which these privileges and rights are essential. As to the extent of this easement, the conduct of the parties in undertaking to acquire ten feet, for the obvious purpose of

this easement, the overhangng porches, the encroaching areas, seem to us to make ten feet a reasonable width, and no more than is properly necessary.  The unloading of coal, the carrying away of garbage and other necessary usages, could hardly be accomplished in a narrower space.  In this vew of the case we find it unnecessary to treat this as an easement, exclusively for light and air, or to enter upon a discussion of the doctrine of easements by implication.  Nor is it an answer to the effect of this annexation to the property of the easement and rights resulting from the manner of improving the premises conveyed to say that Haller, as the owner, could not create an easement for himself in his own land.  The question here is, what is the effect of his conveyance, and what has he added to the realty in favor of his grantee in the mortgage?  We think he annexed not only the building but the rights and privileges in his adjacent land essential to its enjoyment.

2. As to the Grayson trust.  In addition to the discussion already had as to the right of the Warner trust to have an easement in this strip, it is admitted that when the Grayson trust was executed the building was up, the easement was in actual use, and it is apparent had become necessary to the building as constructed.  The purpose of Haller to use this part of the property for the purposes stated is manifested in what he had done, and the subsequent purchasers of the equity took with full notice not only of the language of the recorded deed of trust, but had actual notice of the condition of the property. We think this feature of the case comes clearly within the doctrine ruled in *Shepherd* v. *Pepper,* 133 U. S. 626, 650.  It is important to note in this connection that counsel for the Grayson trust do not dispute the right of the Warner trust to have a lien upon the easement in the ten-foot strip, and states that he does not desire to be heard upon that subject.  The persons contesting that right (and as well the right of Grayson) in this court are Wood and Talbott, the successors of Haller, and upon the facts shown, standing in his shoes and with full notice of the necessity of this right of way or easement to the use of the

property and Haller's attempt to obtain it by release from the McReynolds and Meriweather trust. It was subsequently specifically covered in the conveyance in trust for Haller and Wood to Duke, and it is admitted in the answer of Wood and Talbott that it was the original intent to so place the building as to give room about it; the rights of Wood and Talbott are no higher or better as against either Warner or Grayson than Haller's from the facts presented in this case.

3. Was the decree right in ordering the sale of the property in its entirety in the discretion of the trustees? Sales are thus ordered in entirety when the interests of the mortgagors and incumbrancers require it. *Shepherd* v. *Pepper*, 133 U. S. 626, 651, and the authorities there cited. In this case counsel for the Grayson trust states in his brief that he does not insist upon such sale as an entirety, and in the draft of a decree, as submitted by him, no such sale is provided for. In the view we have taken of this case we cannot see that the first incumbrance, the Warner trust, requires such a sale to protect that interest. There is no dispute as to the lien of the McReynolds trust upon the property described in their deed; as against it no easement is claimed. We see no reason why, with adequate protection for the McReynolds trust, in a sum to be found sufficient in the court executing the decree, to be retained out of the purchase money of the flats property with an easement in the ten-foot strip, the flats may not be sold with the ten-foot strip as one piece and the remainder of the property as another. Such a form of decree is suggested in the brief of the counsel for the Grayson trust, and no incumbrancer seems to object to it, and the holders of the equity of redemption insist upon a separate sale. We think it would be the fairer way to all concerned to order the sale of the property as herein indicated.

We, therefore, upon the whole case modify the decree of the Court of Appeals in respect to the Warner trust and the ten-foot strip, and as to the sale of the property as an entirety, as

hereinbefore stated. In other respects the judgment of the Court of Appeals is

Affirmed.

This disposes of the appeals in Nos. 89 and 90, which were taken from the last and final decree in the Court of Appeals. The appeal in No. 439 was taken from the decree of the Court of Appeals remanding the case to the Supreme Court, which was not final, and is therefore dismissed. The other appeals raise all the questions made in the case.