ELIAS GUREVICH ET AL. *v.* LOUIS GOLDMAN

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued April 7—decided May 12, 1954

Charles G. Albom, with whom was *Philip Mancini, Jr.,* for the appellant (defendant).

*Charles Henchel,* with whom was *Jack B. Talsky,* for the appellees (plaintiffs).

DALY, J. This is an appeal by the defendant from a judgment of the Superior Court enjoining him from erecting or maintaining barriers on his premises in such a way as to shut off access to or egress from a building upon the adjacent land of the plaintiffs, and from impairing the use of an areaway constructed as part of the building. He claims that the court erred in concluding that easements in and over his land, created after the execution, but before the foreclosure, of a mortgage to the Savings Bank of New London on the premises now owned by the plaintiffs, passed under the mortgage and inured to the benefit of the mortgagee and its grantees, the plaintiffs.

In 1923, Peter J. McIntyre was the owner of five parcels of land, known as 8, 10, 12, 14 and 16 Jefferson Street, on the westerly side of Jefferson Street in New Haven. The first four parcels are hereinafter referred to as the first piece, and the remaining one, 16 Jefferson Street, as the second piece. On July 10, 1925, McIntyre mortgaged the second piece to the Savings Bank of New London. The mortgage deed contained the following habendum clause: "To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto the said Savings Bank, and its assigns forever, to its and their own proper use and behoof." There was a four-story brick structure, housing eighteen tenants, upon the second piece. On each of the four parcels known as 8, 10, 12 and 14 Jefferson Street there was a brick building. The sidewalls of each building were on the boundary lines of the parcel of land upon which it was located. Each of the houses on the first piece

had a substantial back yard. The building on the second piece extended very close to the rear boundary line, with no substantial back-yard space, and its south wall abutted the north wall of the building upon the parcel known as 14 Jefferson Street.

On October 26, 1926, McIntyre purchased from Harris Alderman and Annie Alderman the fee in a parcel of land immediately to the north and west of the second piece. These premises are referred to herein as the third piece. In 1930 or 1931, McIntyre made an excavation along the south side of the building on the second piece. The excavation extended southward into the back-yard space of the first piece. It was made to provide air and light for an apartment in the basement of the building on the second piece and has been maintained and used for that purpose. A pipe fence was erected to guard people from injury by falling into the areaway.

By foreclosure, title to the second piece became absolute in the Savings Bank of New London on April 24, 1942. On November 15, 1945, the bank conveyed title to it to the named plaintiff by quitclaim deed containing the following habendum clause: "To have and to hold the premises, with all the appurtenances, unto the said grantee, his heirs and assigns forever." Thereafter, the plaintiff David Gurevich became a co-owner of the second piece. McIntyre continued to own the first and third pieces until the time of his death in 1948. All of the tenants of the buildings on the first and second pieces used the third piece, from the time McIntyre acquired it, as a means of ingress to and egress from the rear of their premises. On November 1, 1949, the defendant acquired title to the first and third pieces by a deed from the administrator of McIntyre's estate. The

defendant erected a fence along the northerly boundary line of the third piece and requested the plaintiffs to share the cost. He refused to accept the sum offered by them because he did not feel that it was ample. The defendant and the named plaintiff also discussed the taxes on the third piece; the defendant has paid them without contribution from the plaintiffs.

During the period from April 24, 1942, to November 15, 1945, while the second piece was owned by the Savings Bank of New London and prior thereto, a fire escape, extending from the top floor to the ground, was on the rear of the building on the second piece. It had a staircase from the second floor which terminated on the ground south of the second piece and directly in the rear of the buildings known as 12 and 14 Jefferson Street, part of the first piece. Sometime after April 24, 1942, upon McIntyre's request that the fire escape be removed from his land, the staircase was reversed. All of the fire escape was then in the rear of the second piece, with its terminus leading to a driveway on the third piece. While the Savings Bank of New London owned the second piece, its agent attached an iron chain with a lock to a concrete post at the sidewalk line on Jefferson Street and to the northeast corner of the building upon the second piece, thus preventing vehicular traffic over the driveway on the third piece. During this period, whenever McIntyre desired to have vehicles make deliveries to or from the rear of the first piece, he would obtain the key, remove the chain and, after making use of the driveway, fasten the chain and return the key to the janitor of the building upon the second piece. When deliveries of coal and other supplies were being made to the rear of the building on the second piece, the chain was

removed. Upon many of these occasions McIntyre was present and had actual notice of the use of the driveway.

At no time from 1942 until his death in 1948 did McIntyre, then the owner of the first piece and the third piece, the driveway being on the third piece, object to the use of the driveway by the owners or tenants of the second piece. Its uninterrupted use for access to the rear of the second piece continued from October 26, 1926, until shortly before October 24, 1952, when the defendant erected high board fences which effectively sealed off the rear of the building on the second piece so that no access could be had in any way from the outside to it. This sealing off constituted a violation of the building and fire ordinances and laws of the city of New Haven and the state of Connecticut. The defendant claimed that he was the owner of the third piece and that the plaintiffs and their tenants had no rights therein. He also intended to fill up the areaway which was on part of the first piece. The plaintiffs would be required to expend at least $3000 per floor to reconstruct their building to comply with the building and fire laws if the fences are maintained.

The trial court concluded that McIntyre's purchase of the third piece was made for the enjoyment and benefit of the second piece; that his use of the third piece for such enjoyment and benefit was continued from 1926 until 1942, when the Savings Bank of New London acquired title to the second piece, and that the use was so obvious and manifest to everyone as to show that it was meant to be permanent; that the use of the third piece was highly convenient and beneficial for the enjoyment of the second piece; that at the time the Savings Bank of New London acquired title to the second piece, that piece

then held an easement in the third piece; that the bank acquired, in addition to its title to the second piece, an easement over the third piece for the purpose of obtaining access to and egress from the second piece; that it conveyed all its rights, including the easement in the third piece, to the named plaintiff, under the habendum clause in the deed to him, by the grant of the premises "with the appurtenances thereof"; that the same principles of law applied to the areaway; that the areaway was created by McIntyre for the benefit and enjoyment of the second piece, which had an easement over the land covered by it; and that the defendant's action was an unlawful interference with the plaintiffs' rights. By its judgment, the court enjoined the defendant "from erecting or maintaining board fences or any other barriers at the rear of [the second piece], in such a way as to shut off access to or egress from the rear of the building located on said premises, or from filling or changing the areaway . . . or from affecting or impairing in any manner the use of said areaway."

The defendant's principal claim is that the plaintiffs had no easement by implication in the third piece. He contends that the plaintiffs' predecessor, the Savings Bank of New London, could not and did not have such an easement because McIntyre did not own the third piece until October 26, 1926, more than a year after he had executed the mortgage to the bank. He also claims that the plaintiffs had no easement by implication to maintain the areaway on part of the first piece since it was not constructed at the time the mortgage was executed.

An easement appurtenant to land, created or acquired by a mortgagor or his grantees subsequent to the execution of the mortgage on the dominant es-

tate, passes under the mortgage, although not specifically mentioned therein, and inures to the benefit of the mortgagee and his grantees. *Stanislaus Water Co.* v. *Bachman*, 152 Cal. 716, 724, 93 P. 858, 15 L.R.A. (N.S.) 359; *Hankey* v. *Clark*, 110 Mass. 262, 266; *Swedish-American National Bank* v. *Connecticut Mutual Life Ins. Co.*, 83 Minn. 377, 382, 86 N.W. 420; *Richmond* v. *Bennett*, 205 Pa. 470, 473, 55 A. 17; see *Johnson* v. *Sherman County Irrigation, Water Power & Improvement Co.*, 71 Neb. 452, 459, 98 N.W. 1096; *Latta* v. *Catawba Electric Co.*, 146 N.C. 285, 301, 59 S.E. 1028; note, 116 A.L.R. 1078. The granting clause in a mortgage includes not only the improvements, ways and easements upon or appurtenant to the property at the time but the easements that become necessarily appurtenant thereto upon the adjacent property of the grantor. A mortgagor adds to the realty, in favor of his grantee in a mortgage deed previously executed, the rights and privileges in his adjacent land essential to the enjoyment of the mortgaged premises. *Warner* v. *Grayson*, 200 U.S. 257, 270, 271, 26 S. Ct. 240, 50 L. Ed. 470.

*Adams* v. *Manning*, 51 Conn. 5, 8, relied upon by the defendant, is distinguishable from the present case. The facts in the *Adams* case were that Cockings mortgaged a mill site to Magill. Thereafter, Cockings acquired additional flowage rights to enlarge his mill pond. He was able to do so, however, only by reason of his granting to Adams, the plaintiff, the right to take a certain portion of the water from the enlarged pond. Magill foreclosed the mortgage and conveyed to the defendants. The latter sought to cut off Adams' right to take water, claiming, among other things, that the additional flowage rights acquired by Cockings had come under the lien

of Magill's mortgage and, therefore, the right to take water granted by Cockings to Adams was subordinate to the mortgage and had been foreclosed. The court held that this claim was not well founded, not because the additional flowage rights acquired by Cockings had not become attached to the mortgaged property, but because coincident to their coming into existence, and paramount to them, was the grant to Adams. Accordingly, the case does not hold that an appurtenant easement acquired after a mortgage does not come under the lien of the mortgage. It holds simply that such an easement attaches to the mortgaged property only to the extent that the easement is not qualified or restricted by conflicting rights of other parties.

There is no error.

In this opinion the other judges concurred.