William H. Spikings, Appellee, v. Fred A. Ellis et al., Defendants. Lottie Ellis, Appellant.

Gen. No. 9,187.

Opinion filed May 18, 1937. Rehearing stricken June 21, 1937.

GERALD C. SNYDER and EDWARDS & BLOCK, all of Waukegan, for appellant; GERALD C. SNYDER, SIDNEY H. BLOCK and WILLIAM T. KIRBY, of Waukegan, of counsel.

KURT KIESOW, of Waukegan, and MILTON G. MANASSE, of Chicago, for appellee; MILTON G. MANASSE, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

On July 26, 1934, William H. Spikings filed a suit in the circuit court of Lake county against Fred A. Ellis, Lottie Ellis, and Claude C. Ellis, Winnetka Trust and Savings Bank, and Fred A. Ellis, a corporation. The first count of the complaint was in equity, to set aside certain conveyances of land and corporate stock alleged to be fraudulent as against the plaintiff. It charged that Fred Ellis was indebted to the plaintiff. The second count was in law upon a guarantee for rent signed

by Fred A. Ellis. A default judgment was taken on the second count for $2,500.

The first count of the complaint alleged that Fred A. Ellis, had become indebted to the plaintiff on a guarantee for rent, signed by him on August 15, 1930, on which a judgment was recovered for $2,500 on July 11, 1933. It is on this judgment that the plaintiff asks for relief and alleges that Fred A. Ellis, to hinder and delay payment on this debt, had conveyed away his interest to certain described property to his wife and son, and that these conveyances were not real, but fraudulent as to the plaintiff; that no consideration was paid for the transfer of this property; that the same were executed with the intention of defrauding the plaintiff; that the conveyances were a voluntary settlement on Ellis's wife, which left him insolvent.

The bill prayed for discovery as to all of the transactions between Fred A. Ellis, Lottie Ellis, Claude Ellis, and closed with a prayer for relief as follows: "that all fraudulent transfers to said co-defendants may be set aside, and their real interests, if any, in the property or estate of the principal defendant may be ascertained and determined; and for such other relief as may be agreeable to equity and good conscience."

The defendants filed their answer and admitted the conveyances, but denied they were made with any fraudulent intent to hinder or delay Fred A. Ellis's creditors, and expressly stated the conveyances were all made upon good and sufficient consideration. The issues upon the first count were referred to the master in chancery to take proof and report his findings to the court. During the pendency before the master in chancery, Fred Ellis, on April 11, 1935, died. Lottie Ellis changed counsel in the case, and by her new counsel filed a counterclaim, which recited that the sole interest of Fred A. Ellis in the property allegedly, fraudulently conveyed had been held in joint tenancy, and that he

also had a dower interest in another piece of property, but, because of the death of Fred A. Ellis, his joint tenancy and dower interest has lapsed, and she, Lottie Ellis, was entitled to the property, free from any claims of the creditors of Fred A. Ellis. She alleged the suit to be a cloud on her title and prayed that it be dismissed and that the court find a clear title in her.

The matter was again referred to the master. He filed his report, and found the conveyances fraudulent, except as to certain property which is not involved in this suit. Exceptions in the circuit court were overruled, and the court entered judgment finding the conveyances fraudulent as to Fred A. Ellis, and ordered the realty and corporate stock sold to satisfy plaintiff's claim.

The defendants made a motion to vacate the default judgment entered on the guarantee contract, but were overruled, except as to part. The court allowed a credit on said judgment, reducing it to $1,898.99. The court then entered a decree finding that this sum was the amount due from Fred A. Ellis to the plaintiff, and was a lien on the property in question, and that the same should be sold to satisfy the judgment. It is from this decree that the appellant, Fred A. Ellis, and others, prosecute this appeal. The appellee, Spikings, has assigned cross errors, in which he contends that the court erred in reducing the judgment previously entered, from $2,450 to $1,898.99, and that the decree is inadequate as to the corporate stock found to be transferred in fraud of plaintiff's rights.

The plaintiff, to maintain his case, called Milton G. Manasse, one of the attorneys for the plaintiff, who testified and identified plaintiff's exhibits, which were admitted without objection. The first 10 exhibits were communications in the nature of demands from the plaintiff to the defendant, for payment of the indebtedness. Exhibits 11 to 16 inclusive, were deeds from

Fred A. Ellis and Lottie Ellis, to Claude C. Ellis, for the property involved in this suit, dated April 4, 1933, and deeds from Claude C. Ellis, a bachelor, to Lottie Ellis, dated April 14, 1933, all of which were duly acknowledged and recorded. It was then stipulated: ''The signatures to these deeds were valid and that the deeds had been mailed by the respective recorders to the grantee named in each deed; that three of the properties had been owned by Fred A. Ellis and Lottie Ellis, as joint tenants, and not as tenants in common; that the Fred A. Ellis Co., was incorporated in 1924, with 89 shares of stock to Fred A. Ellis and 10 shares to Lottie Ellis, and 1 share to another person; that in 1924, Fred A. Ellis retained 65 shares, and on April 15, 1933 a certificate of 59 shares was issued to Lottie Ellis, and a certificate of .one share was issued to Fred A. Ellis; that after the last transfer was made, Fred A. Ellis was insolvent.'' There were further stipulations in regard to the incumbrances upon the property, which is not material to the issues in the case.

The plaintiff then called as a witness, Claude C. Ellis, who testified to the relationship of the parties to the suit. He stated that Fred A. Ellis was president of the Fred A. Ellis Co. and a director; and that Earnest Ellis was secretary-treasurer and a director. The witness identified signatures, and stated that to the best of his knowledge, his father did not know of the debt to Spikings, the plaintiff, when the conveyances of the property in question were made. It was later stipulated that Fred A. Ellis knew of the plaintiff's claim at the time the conveyances were made.

This was all of the testimony that was introduced by plaintiff in chief. Thereupon, the defendants, by their attorneys, moved for a finding in their favor, on the grounds that there was no proof of the material allegations of the complaint; that the deeds were executed for a pretended consideration; that the deeds were issued

to hinder and delay or defraud the creditor. The master reserved his ruling on the motion, and informed counsel for the defendant that they might proceed with their case without waiving their motion and without prejudice to their right to have the motion passed upon.

The defendant then introduced evidence which tended to show that Fred A. Ellis was indebted for a considerable sum to the Fred A. Ellis Corporation. The debt consisted chiefly of advances and loans from the corporation to Fred A. Ellis, over a period of from eight to ten years; that the total indebtedness amounted to approximately $15,000; that the property which the Fred A. Ellis Co. had been occupying was owned by Lottie Ellis, individually, and that the company owed Lottie Ellis for rent and money loaned to the corporation, a sum of approximately $20,000; that Claude Ellis knew that his father had incurred liabilities aside from the money he owed the corporation; that it was agreed among themselves that Fred A. Ellis would turn over his interest in the property to the corporation; that since the corporation was not competent of holding the title, the transfer was made to Claude C. Ellis, as vice president; that the consideration for the transfer was the indebtedness of Fred A. Ellis to the corporation; that in order to satisfy the debt of the corporation to Lottie Ellis, the corporation, acting through Claude C. Ellis, then transferred the property to Lottie Ellis in partial satisfaction of the debt owed to her; that at this time Fred A. Ellis was 80 years old and in poor health, and Lottie Ellis was 76 years old; that these conveyances were made to straighten out the financial status of the firm with the Ellises. The witness further testified that the stock transferred from Fred A. Ellis was also done for the purpose of straightening out the financial affairs between the Ellises and the corporation.

In rebuttal, the plaintiff called Earnest Ellis who described how the accounts of the Ellises had been carried

on the books of the corporation. He stated that they had all been carried in the name of Fred A. Ellis until in the spring of 1933, when he had directed the bookkeeper to break the account so as to show the account of the father, Fred A. Ellis, and of the mother, Lottie Ellis. He said he did this when he learned his father was getting himself implicated in real estate deals.

The mother, Lottie Ellis, was called as a witness, and testified that she had left the management of the business to her husband, Fred A. Ellis. Her personal knowledge of the transactions was very limited, but she did claim that the corporation owed her about $18,000, and that none of the debts from the corporation to her had been paid until the transfer of this property.

The master found that the judgment, with the exception of $38.72, remained unsatisfied; that the property in question was held in joint tenancy; that as between Fred A. Ellis and the Fred A. Ellis Corporation, there was no enforceable debt due and owing from him to the corporation; that the conveyance of three parcels of land were fraudulent as to the plaintiff and should be subjected to his claims. The master denied the counterclaim of Lottie Ellis, as to the three parts that were held in joint tenancy, and stated he did not believe she succeeded to the title by virtue of the survivorship of these properties. The defendant, Lottie Ellis, filed exceptions to the master's report, and also filed a motion to vacate the default judgment, which was taken on the second count of the complaint. The court overruled the exceptions and denied the motion to vacate the judgment, but did allow a reduction of the judgment as heretofore stated.

It is first insisted by the appellant that the complaint should have been dismissed for want of equity, because the plaintiff failed to make out a prima facie case, and that the appellant's rights were fully protected by her motion before the master in chancery, and the state-

ment of the master, that, ''the ruling on the motion would be reserved and without prejudice to have the motion passed upon.'' Instead of the defendant resting her case on her motion, she proceeded to introduce evidence to show the real consideration for the transaction in question. This motion was not renewed at the close of all the evidence. Assuming that the same ruling of the court would apply to a motion to dismiss before a master as it does in the trial court, it has frequently been held that when the defendant does not stand by his motion for a directed verdict at the close of the plaintiff's case but offers evidence in his own behalf, he waives his rights under his motion, especially if the motion is not renewed at the close of all the evidence. *Mantonya v. Martin Emerich Outfitting Co.*, 172 Ill. 92; *Cratty v. Buker*, 195 Ill. App. 506. Whether the plaintiff made out a prima facie case in the first instance, the defendant, by offering evidence and failing to renew the motion has waived this objection.

The plaintiff next insists that the findings of the master and the decree of the court, finding that there was no consideration for the transfers in question, and that the same were made with the intent to defraud the creditors of Fred A. Ellis, was not sustained by the evidence in the case. It will be observed that the book accounts of the Fred A. Ellis Co. were all carried in the name of Fred A. Ellis, prior to the time the transfers of the properties were made, and that when the son learned that Fred A. Ellis was being involved in real estate deals, he directed the accounts to be broken up, but the evidence is not clear as to what, if anything, Fred A. Ellis owed the corporation at the time that these transfers were made. The facts in regard to the judgment were not greatly in conflict. This court would not be justified in setting aside the decree, because the evidence did not sustain the findings of the chancellor, unless it is manifestly against the weight of the evi-

dence.  After a careful examination of this record, we cannot say that the findings of the master and the decree of the chancellor are manifestly against the weight of the evidence.

It is contended that after Fred A. Ellis died, there was not any property which could be reached by the court to satisfy the debts of Fred A. Ellis, which he had contracted during his lifetime.  The record shows that Ellis died prior to the time that the decree was rendered.  The laws seems to be well settled that a creditor by proper action can reach the interest or title to property held by the debtor in joint tenancy, if he does it before the life tenant dies, but the same cannot be reached after the debtor's death, because the title then has become vested in the other joint tenant.  "Thompson on Real Estate" page 930, paragraph 1717, has this to say (Under Topic "Levy and Sale Upon Execution of Interest of Joint Tenant"):  "The individual interest of one joint tenant is subject to levy and sale upon an execution against him.  The levy and sale operate as a severance of a joint tenancy."  In support of this statement, he cites the cases of *Thornburg v. Wiggins*, 135 Ind. 178, 34 N. E. 999; *Midgley v. Walker*, 101 Mich. 583, 60 N. W. 296; and several cases from other States.  The *Thornburg v. Wiggins* and *Wilson v. Younger* cases, *supra*, both support the rulings as stated by Thompson in his text.  Our Supreme Court in the case of *Lawler v. Byrne*, 252 Ill. 194, held that a joint tenancy may be severed by a sale or mortgage of the interest of one of the joint tenants. *Liese v. Hentze*, 326 Ill. 633, 637.  That the same may be done is recognized in the case of *Johnson v. Muntz*, 364 Ill. 482; *Peoples Trust & Savings Bank v. Haas*, 328 Ill. 468; *Feingold v. Roecshlein*, 276 Ill. 79; *Stocker v. Curtis*, 264 Ill. 582.

It is strenuously argued by the appellant that when Fred A. Ellis died the title to the property was then

vested in Lottie Ellis and there was nothing that the plaintiff could levy on as the interest of Fred A. Ellis had been terminated. It will be observed that the decree finds that Fred A. Ellis was indebted to the plaintiff in a certain amount ($1,898.99) with accrued interest thereon, and costs of suit; that this sum was ordered to be paid within five days; and that the defendant should surrender the stock certificate to the master in chancery within 10 days; and that an undivided one-half interest in all of the real estate formerly held in joint tenancy by and between Fred A. Ellis and Lottie Ellis be sold by the master in chancery, subject to the mortgages, etc., or so much of the property as may be sufficient to pay the amount due the plaintiff; that the real estate shall be sold first; that if the proceeds thereof does not satisfy the debt, then the stock of the Ellis Company shall be sold, or so much thereof as is necessary to satisfy the debt due the plaintiff. This decree does not attempt to set aside the conveyances from Mrs. Lottie Ellis to Claude Ellis; or from Claude Ellis to Lottie Ellis; but it does impress the property with a lien for the amount due the plaintiff. The court recognizes the conveyance as between the Ellises is a valid conveyance and only fraudulent as to a creditor. It is our conclusion that when Fred A. Ellis and Lottie Ellis conveyed the property in question to Claude Ellis, they thereby destroyed the joint tenancy existing between Fred A. Ellis and Lottie Ellis, and that when Claude Ellis conveyed the same to Lottie Ellis, she took it in fee simple, and not in joint tenancy; that the equitable interest in the property heretofore transferred by Fred A. Ellis should be subjected to the payment of the judgment heretofore rendered.

The appellee insists that the court had no authority or right to reduce the judgment from $2,450 to $1,898.99. We think the court had ample authority when his attention was called to the fact that the judgment was for a

larger amount than was due, and that certain credits should have been allowed that were not taken into consideration when the default judgment was entered, to reduce it to the proper amount to show these credits.

The appellee also contends that the court erred in not making proper provision for the disposition of the corporate stock transferred by the plaintiff. The appellee does not show in what manner the decree is erroneous in regard to this stock. He is hardly in a position to urge this error and have the case remanded for the correction of his own decree. We find no merit in the cross errors assigned by the appellee.

It is our conclusion that there is no reversible error in the case. The judgment of the circuit court of Lake county is hereby affirmed.

*Judgment affirmed.*