EDER *v.* ROTHAMEL ET AL.

[No. 115, October Term, 1952.]

*Decided April 17, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Herbert C. Fooks,* for appellant.

*Paul J. Wilkinson,* with whom was *Philip J. Joerdens,* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

The appellant, George J. Eder, on January 15, 1940, secured a judgment in the Superior Court of Baltimore City for $800.00 against William H. Rothamel, who owned certain property in Baltimore as joint tenant in fee with three other individuals. William H. Rothamel died in 1941 before there was a levy or execution on the judgment. Another of the joint tenants died in 1947.

In May, 1951, the two remaining joint tenants conveyed said property to the Guarantee Title Holding Corporation and the Most Reverend Francis P. Keough, Roman Catholic Archbishop of Baltimore, a corporation sole.

On January 10, 1952, five days within the twelve-year statutory limit, the appellant caused to be issued from the Superior Court of Baltimore City a writ of *scire facias* against the heirs, administrators and terre tenants of the said William H. Rothamel and of the other deceased joint tenant, and against the Guarantee Title Holding Corporation, the Most Reverend Francis P. Keough, and the surviving joint tenants, to keep alive and in full force, the said judgment and the lien thereof against the property. Pleas and a replication were filed, the case was heard before the Court on an agreed

statement of facts, and judgment was entered for the defendants, the appellees here.

It is agreed that the sole question to be answered by this appeal is this: Is a joint tenancy severed by the lien of a judgment against one of the joint tenants? If it is, the lien continues to embrace the interest of that joint tenant after his death. If it is not, that interest passes unemcumbered to the surviving joint tenants.

A final judgment becomes a lien on real property owned by the judgment debtor within the jurisdiction of the Court. *Poe, Practice, Tiffany Ed.*, Section 374; *Ahern v. White*, 39 Md. 409, 417; and Article 26, Section 20 of the Maryland Code (1951 Ed.). The succeeding Section of Article 26 provides that execution or attachment may issue on all judgments within twelve years and that in case of the death of any defendant in any judgment, the plaintiff may have a writ of *scire facias* to renew or revive a judgment.

The appellant contends that the effect of the judgment and the right to *scire facias* gives him a valid lien on the interest his judgment debtor had in the property, as a joint tenant, and a right to have that interest sold to satisfy his judgment. He relies on the language of *Lee v. Keech*, 151 Md. 34, 37, 133 A. 835, quoted in *McHugh v. Martin*, 198 Md. 173, 177, 81 A. 2d 623, 625, that a judgment creditor has " 'a general, statutory lien on the property of his debtor, consisting of the right to have any part of that property he may select, or all of it, sold for the payment of the judgment. And this right follows real property into the hands of any subsequent owner.' " For a discussion of the origin and nature of the lien, see *Coombs v. Jordan*, 3 Bland 284; *Frank, Title to Real and Leasehold Estates*, 279, 280. There is no doubt that the interest of the joint tenant may be sold in execution by the judgment creditor, while the joint tenant lives. *Fladung v. Rose*, 58 Md. 13; and *2 American Law of Property*, Sec. 6.2, page 10.

The legal theory of joint tenancy has induced a logical and unanimous holding by the cases that unless the

property is sold under the judgment lien during the life time of the debtor, in some jurisdictions, execution levied, the same result does follow, and at his death, the surviving joint tenant or tenants take, free of the judgment lien.

Maryland by statute specifically permits joint tenancy —Article 50, Section 13 of the Code (1951 Ed.). The characteristics of a joint tenancy are its four unities; that is to say, the unity of interest, unity of title, unity of time, and unity of possession. *Chew v. Chew*, 1 Md. 163; *2 American Law of Property*, Sec. 6.2; and *2 Tiffany, Real Property*, 3rd Ed. Section 425. These must coincide—if any is lacking, the estate cannot be one of joint tenancy. The destruction of one or more of the four unities severs and destroys the joint tenancy and this may be done by a conveyance, voluntary or involuntary, of the interest of one of the joint tenants. A joint tenant may convey his interest by deed, and the result is a severance of the joint tenancy and the creation of a tenancy in common between the grantee and the surviving joint tenant or tenants. *2 Tiffany, Real Property*, 3rd Ed. Sec. 425; and *2 American Law of Property*, Sec. 6.2. There may be a partition by decree of Court as between joint tenants. Article 16, Sec. 170 of the Code (1951 Ed.). The joint tenant may mortgage his interest. The joint tenancy will be destroyed by this conveyance. *Wolf v. Johnson*, 157 Md. 112, 145 A. 363; *McPherson v. Snowden*, 19 Md. 197; and *2 American Law of Property*, Sec. 6.2.

The point at which an involuntary conveyance reduces the interest of one of the joint tenants to the point of severance and destruction of the joint tenancy, varies with different jurisdictions. In some, this occurs when there is a levy on a judgment. Generally, this is where under a levy there is a seizure of real estate and the holding is that this seizure interferes with possession of the joint tenants so as to cause the destruction of the unity of possession and the consequent severance of a joint estate. In other jurisdictions where the levy

does not deprive the tenant of the use of his property, it is held that there is no interference with any of the unities, and consequently, no severance of the joint tenancy. See *Van Antwerp v. Horan*, 390 Ill. 449, 61 N. E. 2d 358, 161 A. L. R. 1113; and annotation in 161 *A. L. R.* 1139. There is complete agreement, however, in all jurisdictions that (a) the levy and completed sale in execution does sever the joint tenancy, and (b) the mere obtention or docketing of a judgment lien does not operate to sever the joint tenancy. We have been referred to no case in the United States or England, nor have we found any, which holds otherwise. In every reported case, it has been held that a judgment lien, without levy or execution on the judgment, does not sever a joint tenancy or prevent the interest of the judgment debtor from passing to or ripening in the surviving co-tenants, free of lien. *Musa v. Segelke & Kohlhaus Co.*, 224 Wis. 432, 272 N. W. 657, 111 A. L. R. 168; *Spikings v. Ellis*, 290 Ill. App. 585, 8 N. E. 2d 962; *Zeigler v. Bonnell*, 52 Cal. App. 2d 217, 126 Pac. 2d 118; *Peoples Trust & Sav. Bank v. Haas*, 328 Ill. 468, 160 N. E. 85; *Jackson v. Lacey*, 408 Ill. 530, 97 N. E. 2d 839; 111 *A. L. R.* 171; and *2 American Law of Property*, Sec. 6.2.

In the *Musa* case, *supra*, a man and wife held property as joint tenants. There was a judgment entered against the husband, who died before execution was completed. The Court discusses first the nature of the judgment lien under its statute, and refers to *Lee v. Keech, supra*, 151 Md. 34, 133 A. 835, where this Court held that the judgment was a general lien which " 'gives the judgment creditor no right to the land nor any estate in it. . . Such lien secures the creditor neither *jus in rem* nor *jus ad rem'*." The Court, in the *Musa* case, [224 Wis. 432, 272 N. W. 658], went on to say: "the lien of the judgment in question could attach only to such interest or estate as Adam Musa actually and effectively had in the premises. However, as his interest or estate continued to be that of a joint tenant, while he was alive,

it was at all times subject to and limited by the right of survivorship, which is a special incident of every joint tenancy, and by reason of which, on the death of one joint tenant, his interest goes to his survivor . . . upon the death of the joint tenant, there remains no interest or property right in the deceased in the premises held by him in joint tenancy up to the time of his death . . . unless it can be said that by reason of the mere lien, arising from the docketing thereof, there was an effective severance of the deceased debtor's interest. . . ." It continued: "no precedent has been found to the effect that an effective severance of a joint tenancy occurs by reason of merely the lien which exists as a result of the docketing of a judgment". The Court goes on to say that since there was no severance during the lifetime of the husband, all his "right, title, and interest in the premises became extinguished and ceased upon his death; and that thereupon the entire right, title, and interest therein vested in the plaintiff by virtue of the deed conveying the premises to her and Adam Musa in joint tenancy".

See by way of slight analogy the case of *Stockett v. Howard*, 34 Md. 121, 127, holding that a judgment creditor who allows a term of years to expire before selling under an execution, loses the benefit of his lien on that term. The appellant urges that in the jurisdictions which have held that the judgment lien does not of itself sever joint tenancy, the lien has not the force and effect that it does in Maryland, but is given life only when there is a levy or execution. The decision in the *Musa* case makes it plain that the Wisconsin statute makes a judgment a lien to the same extent as does Maryland. The Illinois cases uniformly hold that a judgment lien does not sever a joint tenancy, and the Illinois lien, by statute, is given the same effect as a Maryland lien. *Jones, Ill. Statutes, Practice*, Sec. 107.151. It has been held in Illinois that a levy adds nothing to the judgment lien. *Van Antwerp v. Horan, supra*. The appellant argues further that there can be no logical distinction

between a lien created by voluntary act and a lien created by a judgment. It is true that in States which have the lien theory of mortgages, it is difficult to logically draw a distinction, although in lien theory States, it is generally held that a mortgage creating a lien severs a joint tenancy sufficiently to protect a mortgagee against the risk of loss of his security, in case the mortgagor dies before the other joint tenant or tenants. *2 American Law of Property,* Sec. 6.2, page 9. In States which take the common law view of a mortgage, as transferring title to the mortgagee, as in Maryland, such a mortgage is a conveyance which will sever a joint tenancy. *Wolf v. Johnson, supra,* and *McPherson v. Snowden, supra.* Further, it has been held in Maryland that the interest of a judgment creditor is quite different from that of a mortgagee of the land. In the latter case, the mortgage is not only a lien but is a transfer of the specific property itself as security for the debt. *Frank, Title to Real and Leasehold Estates,* page 281; *Georgetown College v. Perkins,* 74 Md. 72, 21 A. 551; *Williams v. Safe Dep. & Tr. Co.,* 167 Md. 499, 503, 175 A. 331. The general rule that a judgment lien will not sever the tenancy is consistent with the common law theory that the mere creation of a lien or charge upon joint property would not diminish or affect any unity or a joint tenancy. See *2 Tiffany, Real Property,* 3rd Ed. Sec. 425, page 210-211.

It is apparent that the only question to be answered in this appeal must be answered in favor of the appellees. The lien of the appellant on the interest of William H. Rothamel in the property in question died with him.

*Judgment affirmed, with costs.*