In re Andrew J. **PANHOLZER**, Barbara A. Panholzer, Debtors.

Melvin M. **FELDMAN**, Trustee, Plaintiff,

v.

Andrew J. **PANHOLZER**, Barbara A. Panholzer, John Panholzer, Personal Representative of the Estate of Alma May Panholzer, Equitable Trust Bank, Defendants.

Bankruptcy No. 81–1–1359.
Adv. No. 82–0264A.

United States Bankruptcy Court,
D. Maryland.

Jan. 11, 1984.

Donald Messenger, Beltsville, Md., for debtors/defendants.

Melvin Feldman, Rockville, Md., Trustee of bankruptcy estate.

Melvin Schneider, College Park, Md., for Estate of Alma Panholzer.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This case involves the determination of what happens when a Chapter 7 debtor and another individual own real property as joint tenants[1] at the time of filing of the petition, and the co-owner dies during the administration of the case. The converse of this case involving the death of the debtor is the subject of *In re Lambert,* 34 B.R. 41, ¶ 69,471 BLR (CCH) (Bkrtcy.Colo.1983).

The trustee commenced this adversary proceeding on April 28, 1982, against the debtors, Andrew J. Panholzer and Barbara A. Panholzer, together with Alma May Panholzer, mother of Andrew Panholzer, and the Equitable Trust Company. The trustee sought to sell certain real property located in Calvert County, Maryland, known as 4231 Landing Lane, Dunkirk, Maryland, free and clear of all liens with the liens being transferred to the proceeds, the validity, priority, and amount due thereon to be determined by the court. The trustee also sought to set aside as a fraudulent conveyance a deed from the debtor, Andrew J. Panholzer, to Andrew J. Panholzer and Alma M. Panholzer as joint tenants with right of survivorship. That deed was dated May 3, 1979, and recorded among the Land Records of Calvert County, Maryland, on or about May 8, 1979. The trustee also sued the Equitable Trust Company, the holder of two trusts upon the property, one recorded on April 7, 1977, and the second executed on April 12, 1979, but not recorded until May 12, 1979.[2]

On October 9, 1981, Barbara A. Panholzer and Andrew J. Panholzer filed a joint petition for relief under Chapter 7. Melvin M. Feldman was appointed trustee. The Panholzers showed as an asset of the estate the 50% interest of Andrew J. Panholzer in the Dunkirk property. Their schedules reflected the legal title in the names of Mr. Panholzer and Alma N. Panholzer as joint tenants. On September 22, 1982, Alma N. Panholzer died. John Panholzer was appointed personal representative of her estate acting pursuant to letters of administration granted by the Orphan's Court.

In an effort to simplify matters, a settlement stipulation was presented by the prin-

---

1. Note that it is settled law in this Circuit that the debtor's undivided interest in a tenancy by the entireties becomes the property of the estate. The undivided interest passes to the estate without any severance of the unities of time, title, identity of interest, and possession intact and unaltered that may thereafter be exempted from the estate. This is a characteristic of entireties property and not of property held as joint tenants with the right of survivorship. In the case of *In re Ford,* 3 B.R. 559, 571 (Bkrtcy.Md.1980), *aff'd sub nom. Greenblatt v. Ford,* 638 F.2d 14 (4th Cir.1981), the court concluded that the filing of a bankruptcy petition by one co-tenant does not sever the tenancy by the entirety. Under Maryland law, a tenancy by the entirety cannot be severed or divided into two interests by the act of either spouse, *Eastern Short Building & Loan Corp. v. Bank of Somerset,* 253 Md. 525, 253 A.2d 367, 371 (1969).

2. The Panholzers and the trustee agree that Alma's share is subordinate to both Equitable deeds of trust. See stipulation, *infra.*

cipals to this court. Paragraph 4 of that settlement stipulation, approved by this court after notice to all creditors, provided as follows:

4. The Court will determine whether or not the death of Alma vests or transfers the ownership of the entire property (1) to Andrew's bankruptcy estate; (2) to Andrew free of his bankruptcy estate; or (3) property remains in the status it was in at the time of the filing of the Debtors' Petition.

a. If the Court determines said issue in favor of the bankruptcy estate, then the Debtors' and/or Alma's estate and/or their attorney will retain all rentals for the property covering the period through December, 1982, and will turn over to the bankruptcy estate all rentals thereafter with the Trustee waiving any claim that the bankruptcy estate may have for rentals and contributions for mortgage payments, taxes and interest and/or expenses.

b. If the Court determines said issue in favor of Andrew, then the Trustee will retain all rentals received by him through December, 1982, and will turn over to Alma's estate and/or its attorney all rentals thereafter, with Alma's estate waiving any claim that it might have for rentals and contributions for mortgage payments, taxes and interest and/or expenses.

c. In the event that the Court determines said issue in that the property remains in the status it was in at the time of the filing of the Debtors' Petition, the bankruptcy estate and Alma's estate shall be determined to be the owners of the property equally, fifty percent each, and shall divide and be responsible for the income and expenses and all obligations about the property equally, fifty percent each. The second trust lien of Equitable shall also apply to the entirety of the property, including Alma's estate share thereof, and Alma's estate shall be subordinate to said second trust lien.

Thereafter, the subject real property was sold, and the trustee retained the net proceeds pending further order of this court.

In short, the court must determine what interest the bankruptcy estate had in the Dunkirk property on the date of the filing of the Chapter 7 petition and the effect, if any, of the death of Alma upon the interest of the estate.

The trustee argues that the mortgage recorded on May 12, 1979, did not operate sever the tenancy created by the deed recorded four days earlier which created the joint interest in Andrew and Alma. In the absence of any evidence to the contrary, the court finds that Alma, who received the joint interest without consideration, had knowledge of the second lien securing Equitable and took subject to it. The parties have agreed in their stipulation that the second trust lien of Equitable applies to the entirety of the property, and that the share of Alma's estate is subordinate to the second trust lien.

The trustee further argues that the debtors' estate included the joint tenancy estate and that the incidents of that joint interest including the right of survivorship persevered, so long as the joint tenancy was not severed.

Both the estate of Alma M. Panholzer and the debtors argue that Alma's estate is entitled to 50% of the net proceeds of the sale of the Dunkirk property. They urge that the filing of the bankruptcy petition on behalf of Andrew Panholzer operated to sever the joint tenancy between Alma M. Panholzer and Andrew J. Panholzer and convert that joint tenancy into a tenancy in common.

Unlike a tenancy by the entireties, a joint tenancy may be terminated by the action of one joint tenant. The destruction of one or more of the four unities severs the joint tenancy, and this severance may be accomplished by a voluntary or involuntary conveyance of the interest of one of the joint tenants, the mortgage of the interest of a joint tenant, or the levy or execution on a judgment lien against one of the joint tenants. *Eder v. Rothamel, infra.*

"Joint tenancy may be destroyed by destroying any of its constituent unities except that of time. If A. and B. be joint tenants, and A. conveys his joint interest, being his moiety of the estate, to C., the joint tenancy is severed, and turned into a tenancy in common, as between B. and C., for they hold under different conveyances."

Kent, *Commentaries on American Law,* Lecture LXIV, p. 363, 2d ed. (1832).

In the leading, if perhaps not the only recent, case concerning severance of joint tenancies by judgment liens, the Maryland Court of Appeals in *Eder v. Rothamel,* 202 Md. 189, 95 A.2d 860 (1953), discussed at length the nature of the judgment lien and its impact upon a joint tenancy. Speaking for the court in *Eder v. Rothamel,* Judge Hammond noted:

There is complete agreement, however, in all jurisdictions that (a) the levy and completed sale in execution does sever the joint tenancy, and (b) the mere obtention or docketing of a judgment lien does not operate to sever the joint tenancy. We have been referred to no case in the United States or England, nor have we found any, which holds otherwise. In every reported case, it has been held that a judgment lien, *without levy or execution on the judgment, does not sever a joint tenancy* or prevent the interest of the judgment debtor from passing to or ripening in the surviving co-tenants, free of lien. (Citations omitted, emphasis added.)

95 A.2d 862

It has been suggested that a reading of § 544 of the Bankruptcy Code leads to the conclusion that a joint tenancy is severed by the filing of the bankruptcy petition. Section 544(a)(2) provides:

§ 544. *Trustee as lien creditor and as successor to certain creditors and purchasers*

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of

the debtor or any obligation incurred by the debtor that is voidable by—

\* \* \* \* \* \*

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; ...

The argument follows that the Bankruptcy Code creates the necessary creditor with a judgment lien who has executed against the debtor. This is precisely the procedure mentioned by the Court of Appeals to sever a joint tenancy. *Eder v. Rothamel,* 202 Md. 189, 95 A.2d 860, 862 (1953). However, the vitality of the writ of *fi fa*

"continues no longer than its return date if it is not executed upon and it may expire sooner if the writ is returned without a levy. In other words, if no levy has been made by the writ's return date or a return is made *nulla bona,* as in this case, no levy can be made as the writ is *functus officio* and a new writ is necessary to effectuate a levy on the debtor's goods. *Gaither v. Martin,* 3 Md. 146 (1852); *Coombs v. Jordan,* 3 Bland 284 (1831); *In re Continental Midway Corporation, supra,* 185 F.Supp. [867] at 870–871; 2 Freeman, Executions § 202 (3d ed. 1900); 33 C.J.S. Executions § 131 (1942)."

*Illi, Inc. v. Margolis,* 267 Md. 30, 296 A.2d 412, 415 (1972). Therefore, the interaction of § 544 with the law of Maryland does not effect a severance of the joint tenancy.

The Panholzers point to the following portion of the legislative history in support of their argument that a severance occurred when the property became an asset of the estate:

Bankruptcy Act § 8 has been deleted as unnecessary. Once the estate is created, no interests in property of the estate remain in the debtor. Consequently, if the debtor dies during the case, only property exempted from property of the estate or acquired by the debtor after the commencement of the case and not in-

cluded as property of the estate will be available to the representative of the debtor's probate estate. The bankruptcy proceeding will continue in rem with respect to property of the estate, and the discharge will apply in personam to relieve the debtor, and thus his probate representative, of liability for dischargeable debts.

H.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), p. 368, U.S.Code Cong. & Admin. News 1978, pp. 5787, 6324. While this passage addresses what happens if the debtor/joint tenant were to die, the necessary corollary to this reasoning dictates that if the other tenant dies, the estate would be unaffected.

While the legislative history is not directly on point, the following colloquy among Congressman M. Caldwell Butler, Professor Stefan A. Riesenfeld, and Bernard Shapiro, Esquire, involving tenancy by the entirety for the most part, sheds some light:

Mr. Shapiro. We would have a similar problem—would we not, Professor Riesenfeld—in valuing a spouse's interest in a joint tenancy?

Professor Riensenfeld. No, they are separate.

Mr. Shapiro. Although that is done in divorce situations all the time.

Professor Riesenfeld. May I comment on that question a minute please?

Mr. Butler. I wish you would.

Professor Riesenfeld. All right, this section really implements a number of ideas. Let's start with the simple tenancy in common. · Now, only one share would normally be in bankruptcy. The trustee would sell one share and then the purchaser would have to bring a partition action. That decreases the value of the property and makes it very difficult. Therefore, the draft as well as the Bankruptcy Conference thought you should combine the trustee's sale and the partition sale so that the trustee was selling the whole thing as if it were a partition action; that is, like in a partition action, the purchaser gets the whole thing and the proceeds are then divided. Now, tenancy in common is the easiest case.

Next comes joint tenancy. In a joint tenancy the trustee has title but it results in severance. Bankruptcy affects and converts anything that is joint tenancy into a tenancy in common. That means the same situation arises.

Hearings before the Subcomm. on Civil and Constitutional Rights of the Comm. on the Judiciary, House of Rep., 94th Cong., 2d Sess., on H.R. 31 and H.R. 32, pt. 3, pp. 1519 *et seq.* (1976).

## CONCLUSION

The conclusion is inescapable, that if a joint tenancy is terminated "if one of the cotenants conveys his interest to a third person,"[3] that upon the filing of a voluntary Chapter 7 petition by a cotenant, he has similarly effected a conveyance that severs the tenancy. A comprehensive conveyance by the debtor to the Chapter 7 trustee takes place with the commencement of the proceeding and the creation of the bankruptcy estate under § 541(a). *See generally, Collier on Bankruptcy,* ¶ 541.01, 15th ed. (1983).

In the recent case of *In re Lambert,* 34 B.R. 41, ¶ 69,471 BLR (CCH) (Bkrtcy.Colo. 1983), the reverse side of the coin was presented. In *Lambert,* the debtor died after filing his Chapter 7 petition. The court concluded:

Based on the foregoing, it is the opinion of this Court that the filing of a petition in bankruptcy effects a severance of any joint tenancy the debtor may have had in property and that the Trustee and the other former joint tenants of the debtor become tenants in common. Thus, the right of survivorship enjoyed by the former joint tenants is destroyed. The result in this case is that there is, indeed, an undivided one-half interest in the subject property which is property of the estate.

Just as a bankruptcy estate is not depleted by the death of the debtor who is a

---

**3.** *Moynihan, A Preliminary Survey of Real*   *Property,* 131 (1940).

joint tenant, so ought it not be enriched by the death of a joint tenant survived by the debtor. An order will be entered in accordance with the foregoing.