# CIRCUIT COURT OF FAIRFAX COUNTY

Heritage Contracting, L.L.C.

v.

Florentino Vasquez et al.

September 7, 2010

Case No. CL-2008-7066

By Judge Robert J. Smith

This matter comes before the Court on Petitioner Chopp & Company's ("Chopp") petition to intervene. After considering the oral arguments of counsel and reviewing the applicable legal authority, the Court finds that the statutory time limit for filing and perfecting a mechanic's lien has passed as to both debtors. Therefore, the Court denies Chopp's petition.

*Background*

In 2007, Defendants Florentino Vasquez and Santi Singhsindh owned real property located in McLean, Virginia, as joint tenants with the right of survivorship. Vasquez and Singhsindh hired several contractors to supply materials and labor for the property. Defendant Southern Management Corporation Retirement Trust ("SMCRT") loaned Vasquez and Singhsindh money, securing the loan by a deed of trust. Vasquez and Singhsindh defaulted on this loan.

Chopp, one of the retained contractors, supplied a roof truss, lumber, and other building materials for the property. Chopp entered into a contract with I Can Construction ("I Can") and United D&P Corporation ("United") to provide the materials. Singhsindh served as I Can's registered agent at the time of the contract. Allegedly, I Can and United failed to pay Chopp $40,428.77 for the materials. Chopp recorded a mechanic's lien on the

materials on February 20, 2008. On May 30, 2008, Heritage Contracting, L.L.C. ("Heritage"), another contractor, filed a complaint in this Court to enforce its own lien.

Vasquez filed for bankruptcy on July 22, 2008. This Court stayed the entire case on October 20, 2008. The bankruptcy stay was lifted on November 3, 2008. Heritage moved to reopen the matter on December 18, 2009, and, with the permission of this Court, filed its First Amended Complaint to Enforce Mechanic's Lien on May 28, 2010. No contractor filed a response to Heritage's amended complaint, and Heritage and SMCRT sought to settle the case. Chopp filed the present petition to intervene on June 18, 2010.

The property foreclosed in 2009, and SMCRT became the owner. SMCRT subsequently conveyed title to Milagros M. Gavilan, who granted a deed of trust to D. Gene Merrill and Daniel V. Lawson, trustees, and a second deed of trust to Frank F. Glorioso, trustee.

SMCRT objects to Chopp's petition to intervene on the ground that the petition is untimely because Chopp had only thirty days after the bankruptcy stay had been lifted to refile its mechanic's lien. Chopp contends that the petition was timely as to Singhsindh, a joint tenant, as to whom no bankruptcy stay ever existed. Gavilan, the present owner, opposes the petition on the ground that he is a necessary party to any cause of action and that he was not properly joined when Heritage filed its First Amended Complaint.

*Analysis*

A. *Timeliness of Chopp's Petition*

SMCRT objects to Chopp's petition to intervene and to enforce its mechanic's lien on the ground that it was untimely because the lien was extinguished by Vasquez's filing for bankruptcy and was never properly reinstated after the bankruptcy stay had been lifted.

Mechanic's liens are a creature of statute. Pursuant to the Virginia Code, a creditor can seek to enforce its lien within six months of recording the lien memorandum, or within sixty days from the time the building or structure is completed. Va. Code Ann. § 43-17 (2010). If a creditor disregards these statutory requirements, the enforcement of the lien is time-barred. This occurs even if the creditor is named as a defendant. *Isle of Wight Materials Co. v. Cowling Bros.*, 246 Va. 103, 106, 431 S.E.2d 42, 44 (1993).

The filing of a petition in bankruptcy serves to extinguish a mechanic's lien. 11 U.S.C. § 362(a)(4) (2010). However, a party seeking enforcement of a mechanic's lien can successfully reinstate it once the bankruptcy stay is lifted. Specifically, the Bankruptcy Code tolls the statute of limitations for

properly perfected mechanic's liens for the period of time the bankruptcy stay is in effect. 11 U.S.C. § 108(c) (2010); *TQY Inv. v. Rodgers Co., Inc.*, 26 Va. Cir. 40, 43 (1991). Section 108(c) reads as follows:

(c) Except as provided in section 524 of this title, if applicable non-bankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case;

or (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

Chopp filed its original Memorandum of Mechanic's Lien on February 20, 2008. Vasquez, however, filed a Chapter 7 petition in bankruptcy on July 22, 2008, and Heritage filed a suggestion in bankruptcy in this Court on August 28, 2008. The Court stayed this action on October 20, 2008. This sequence of events extinguished Chopp's mechanic's lien, at least as to Vasquez.

Once the bankruptcy stay was lifted on November 3, 2008, Chopp had thirty days from the notice of the expiration of the stay to refile its lien. Chopp did not to do so until filing its petition to intervene in June 2010.

Singhsindh did not file for bankruptcy. Thus, if this Court stayed the *entire* case when Vasquez filed for bankruptcy, the stay eliminated all interests Chopp may have had, and could only revive its lien by filing it again. If the case was stayed only as to Vasquez, and not as to Singhsindh, Chopp's lien would have continued to exist as to Singhsindh's rights in the property. It never would have been extinguished, and refiling would have been unnecessary.

Therefore, the next question is whether the bankruptcy stay operated only as to Vasquez, in which event, any secured interests in the property as to Singhsindh would remain intact.

B. *Effect of a Bankruptcy Stay on a Non-bankrupt Joint Tenant*

Generally, the automatic stay provision of section 362(a) applies only to the debtor and does not stay actions pending against non-bankrupt

co-defendants. *Nippon Fire & Marine Ins. Co. v. Skyway Freight Systems, Inc.*, 235 F.3d 53, 58 (2d Cir. 2000), *citing Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *A. H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1998); *Gray v. Hirsch*, 230 B.R. 239, 241 (Bankr. S.D. N.Y. 1999); *In re Crazy Eddie Sec. Litig.*, 104 B.R. 582, 584 (Bankr. E.D. N.Y. 1989); *In re Anje Jewelry, Inc.*, 47 B.R. 485, 486 (Bankr. E.D. N.Y. 1983).

However, the reviewing court has discretion to extend the automatic stay to solvent co-defendants. In doing so, courts usually consider the following factors: (1) whether continuation of litigation against non-bankrupt co-defendants will disrupt the debtor's efforts to reorganize; (2) whether an extension will cause a hardship on the plaintiff by providing immunity to non-bankrupt co-defendants; (3) whether a recovery would reduce the debtor's insurance funds as to adversely affect the estate; or (4) whether the solvent party is independently liable to the plaintiff. *Piccinin*, 788 F.2d at 998.

In particular, the automatic stay is not extended to sureties, guarantors, co-obligors, or other entities that share similar legal or factual connection with the bankrupt party. *Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983); *see also In re All Seasons Resorts, Inc.*, 79 B.R. 901 (Bankr. C.D. Cal. 1987) (refusing to extend the stay to non-bankrupt co-defendant officers of a debtor corporation); *Butler*, 803 F.2d at 66 (declining to extend to solvent partners of a bankrupt partnership); *Anje Jewelry*, 47 B.R. at 487 (not extending to a corporate president); *In re Hi-Lo Powered Scaffolding, Inc.*, 70 B.R. 606 (Bankr. S.D. Ohio 1987) (ruling not to extend to officers and shareholders of a corporate debtor); *In re Supermercado Gamboa, Inc.*, 68 B.R. 230 (Bankr. D. P.R. 1986) (declining to extend to non-debtor officers and shareholders of a debtor corporation); *In re Philadelphia Gold Corp.*, 56 B.R. 87 (Bankr. E.D. Pa. 1985) (holding not to extend to the chief operating officer and major shareholder of a debtor corporation); *In re Related Asbestos Cases*, 23 B.R. at 529 (refusing to stay as to joint tortfeasors); *G.M.A.C. v. Yates Motor Co.*, 159 Ga. App. 215, 283 S.E.2d 74 (1981) (declining to stay as to joint tortfeasors).

However, the Fourth Circuit carved out an "unusual circumstances" exception to the general rule, which, as noted above, disfavors extending the automatic stay to solvent co-defendants. Specifically, in *Piccinin*, the Court stated that an "unusual situation . . . arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real-party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Piccinin*, 788 F.2d at 999. An example of such "unusual circumstances" would involve a third-party who can seek indemnity from the debtor should a judgment be entered against either party. *Id; Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007).

Thus, the question becomes whether joint tenancy falls into the "unusual circumstances" exception as to allow the extension of the bankruptcy stay to the non-bankrupt co-defendant and joint tenant Singhsindh.

### C. *In the Present Matter, Joint Tenancy Falls into the "Unusual Circumstances" Exception*

It appears that the joint tenancy in the present matter falls into the "unusual circumstances" exception. Therefore, the bankruptcy stay may be extended to include the solvent co-defendant and joint tenant, Singhsindh.

"An estate in joint tenancy is [a concurrent interest] held by two or more persons jointly, with equal rights to share in its enjoyment during their lives. . . ." 51 A.L.R. 4th 906, *2a; *see also Jones v. Conwell*, 227 Va. 176, 314 S.E.2d 61 (1984). Four unities must be present in order to form a joint tenancy: possession, interest, title, and time. 2 William Blackstone, *Commentaries*, *180-82. Moreover, "a joint tenant has capacity to transfer his undivided share in the land' to a third person and thereby convert the estate into a tenancy in common." *Pitts v. United States*, 242 Va. 254, 258, 408 S.E.2d 901, 903 (1991), *citing Virginia Coal and Iron Co. v. Hylton*, 115 Va. 418, 421, 79 S.E. 337, 338 (1913). As a result, "the share of each joint tenant [is] subject to levy by a creditor of that tenant." *Id.* (citing 1 Minor, *Real Property*, § 767). This last point assumes that a joint tenant entered into a lien agreement individually, rather than with a co-signer.

Here, it is undisputed that Vasquez and Singhsindh were joint tenants with the right of survivorship. The first question to resolve is whether the filing of the lien memorandum in May of 2008 severed the joint tenancy. In my opinion, docketing the lien did not sever the joint tenancy. Virginia courts have not addressed this exact issue, but there appears to be a consensus among other jurisdictions that merely obtaining or docketing a lien, without levy or execution, does not sever a joint tenancy. *Eder v. Rothamel*, 202 Md. 189, 95 A.2d 860, 862 (1953). In the case at bar, there is no indication that Vasquez and Singhsindh elected to sever the joint tenancy, nor has any creditor levied an execution on the lien. Therefore, I find that the joint tenancy remained intact even after Chopp filed its Memorandum of Mechanic's Lien.

The next issue is whether Vasquez's filing for bankruptcy severed the joint tenancy. Virginia law is silent on this matter, and nationwide decisions that have addressed this issue are in conflict. *See In re DeMarco*, 114 B.R. 121,125-27 (Bankr. N.D. W. Va. 1990) (concluding that mere passing of title to the bankruptcy trustee in the absence of a partition or sale is not a "conveyance" and does not sever a joint tenancy); *In re Anthony*, 82 B.R. 386, 388 (Bankr. W.D. Pa. 1987) (finding no severance); *but see In re Slifco*, 2007 U.S. Dist. LEXIS 43391, *21 (D. Colo. June 14, 2007);

*Schlossberg v. Ocasio*, 2006 Bankr. LEXIS 4339, \*3 (Bankr. D. Md. July 26, 2000) (deciding that filing severs a joint tenancy and turns it into a tenancy in common); *In re Tyson*, 48 B.R. 412, 414 (Bankr. C.D. Ill. 1985) (finding severance); *In re Panholzer*, 36 B.R. 647, 650 (Bankr. D. Md. 1984) (arriving at an "inescapable" conclusion that filing for bankruptcy constitutes a "conveyance").

Consequently, if Vasquez's filing for bankruptcy severed the joint tenancy in this case, Vasquez and Singhsindh became tenants in common, and Vasquez's ownership converted into a one-half interest. Thus, only Vasquez's debts would be discharged in bankruptcy, and any mechanic's lien or other secured interests would continue to encumber Singhsindh's half. *In re Anthony*, 82 B.R. at 387. Alternatively, if Vasquez's filing did not sever the joint tenancy, his ownership was equivalent to the entirety of the interest in the property. Therefore, any liens existing on the property were extinguished due to Vasquez's filing for bankruptcy and could be revived only by refiling after the bankruptcy stay was lifted. *Id.*

Without severance, the bankruptcy stay, pursuant to 11 U.S.C. § 362, extinguished Chopp's lien as to the entire ownership until the bankruptcy stay was lifted. Although Singhsindh did not file for bankruptcy, Singhsindh remained an integral part of the lien, as a joint tenant and co-signer. Because Vasquez's filing, in my opinion, did not sever the joint tenancy, a judgment against Singhsindh during the period of Vasquez's bankruptcy stay would have amounted to a judgment against Vasquez. This scenario falls squarely into the "unusual circumstances" category defined in *Piccinin*. As previously noted, the court in *Piccinin* considered it to be an unusual circumstance "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real-party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Piccinin*, 788 F.2d at 999.

It is apparent from the foregoing that the joint tenants and co-signers needed to face the bankruptcy proceedings together, rather than piecemeal. Therefore, since Singhsindh was an integral actor and since Vasquez's filing for bankruptcy did not sever the parties' joint tenancy, the present matter may be considered to be an "unusual circumstance" under the holding in *Piccinin*, and the bankruptcy stay extinguished Chopp's lien as to both co-defendant joint tenants. Chopp's only recourse in this scenario was to refile within thirty days after the bankruptcy stay was lifted. This Chopp did not do.

For the reasons stated above, I deny Chopp's petition to intervene.

Because Chopp's petition to intervene is denied, there is no need to address the issue of Milagros Gavilan's inclusion in this case.